**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                          )
NIKA DORSEY, *et al.*,                        )
                                                          )
                        Plaintiffs,              )
                                                          )
            v.                                        )        Case No. 15-cv-1462 (RMC)
                                                          )
DISTRICT OF COLUMBIA, *et al.*,     )
                                                          )
                        Defendants.           )
_____)

**MEMORANDUM AND OPINION**

On the evening of June 7, 2013, officers of the Washington, D.C. Metropolitan

Police Department (MPD) executed a search warrant at 4701 Alabama Avenue S.W., Apartment

31. Without announcing their presence, the officers breached the door of the apartment and then

handcuffed and detained most of its occupants: a husband and wife, a sixteen-year-old boy, and

a grandmother. Only a three-year-old was left without handcuffs but frightened and in tears; the

officers refused to remove the mother's handcuffs so that she could comfort him. The search

was aimed at recovering several Burberry purses stolen from a Virginia store, but no purses were

located. The officer who obtained the warrant had sworn that he was likely to find evidence of

the crime at the home because it was an address at which the get-away car was registered and the

car's primary driver was reported to live; based on his "training and experience," the officer also

sought to search for and seize all electronic devices.

Nika Dorsey and her two children, occupants of Apt. 31 on June 7, sue for alleged

violations of their constitutional rights under the Fourth and Fifth Amendments. Defendants are:

(1) William Dempster, the MPD officer who swore out the affidavit for the search warrant; (2)

1

the MPD officers who, in addition to Officer Dempster, executed the search warrant ("Defendant Officers"[1]); and (3) the District of Columbia.  *See* 2d Am. Compl. [Dkt. 24] ¶¶ 16–18.  Plaintiffs assert that Officer Dempster relied on his "training and experience" to obtain the warrant despite knowing that D.C. warrants based on "training and experience," without specific facts, rarely find what is sought.  Plaintiffs also claim that the officers who executed the search warrant acted in an unconstitutional manner, breaching the door without announcing their presence, using unreasonable force in their search, and overstepping the scope of the warrant.  They allege that these constitutional violations occurred as a result of a pattern and practice of faulty training by the District of Columbia.

All Defendants have moved to dismiss except William Dempster, who has left MPD and has not been served.[2]  *See* Def. District of Columbia's Mot. to Dismiss Pls.' 2d Am. Compl. [Dkt. 27] (DC MTD); Def. Officers' Partial Mot. to Dismiss Counts I, II and V of Pls.' 2d Amended Compl. [Dkt. 28] (Officers' MTD).[3]  The Court will grant the Motions to Dismiss in part and deny them in part.

## I. Background

On June 3, 2013, two people stole nine Burberry purses from a Leesburg, Virginia outlet store and fled in a dark BMW with the license plate EE0674.  Two days later, MPD

---

[1] Specifically, the Defendant Officers are:  Michael Pulliam; Johnathan Lauderdale; Gregory Shiffer; Emma B. Deoleo; Brock Virgil; Anthony T. Campanale III; Nicholas Smith; Christopher Eckhert; and Robert Ranck.

[2] Over 90 days have passed since Plaintiffs filed their Second Amended Complaint on June 10, 2016.  To date, the Court has no record that Officer Dempster has been served with the complaint.  Accordingly, the Court will issue an order simultaneously with this Opinion addressing the lack of service.

[3] Of course, Defendant Officers did not file a "partial motion."  To the contrary, theirs is a complete motion to dismiss in part.

officers spotted the same dark BMW in Northeast DC, when they attempted a traffic stop and the

car sped away.  Notified of this occurrence, Officer William Dempster, a specialist in auto theft,

ran the plates, and learned that title to the BMW was held by two people, one of whom was

Francis Taylor.  Mr. Taylor carried the insurance on the car and was identified as its primary

driver.  His driver's license indicated that he lived at 4701 Alabama Ave. S.W., Apt. 31.

   Several unnamed sources confirmed to Officer Dempster that Mr. Taylor's

current address was Apt. 31, 4701 Alabama Ave. S.W.  Armed with these pieces of information,

Officer Dempster prepared an affidavit and applied for a search warrant to authorize MPD to

search the apartment.  While he had no direct information that evidence of the theft would be

found in Apt. 31, Officer Dempster swore that his "training and experience" led him to conclude

that thieves typically stash stolen items in their homes until they can sell them safely.  2d Am.

Compl. Ex. 1 (Affidavit for Search Warrant) (Affidavit) at 1.  The Affidavit also contained

boilerplate paragraphs to the effect that thieves typically take photos of themselves with their

stolen goods and otherwise document their activities using cell phones and personal computers;

thus, Officer Dempster sought authorization to seize all personal electronic devices and

computers located during the search of Apt. 31.  *Id*.  A judicial officer of the District of

Columbia Superior Court issued the requested search warrant (Warrant).  *Id*. at 5.

   Plaintiffs allege that Francis Taylor did not reside at Apt. 31, 4701 Alabama Ave.,

S.W., at the time of the search and that he had not hidden any Burberry purses there.  When the

Warrant was executed, the only occupants of the apartment were Mr. Taylor's cousin, Nika

Dorsey, her husband, mother, and her two youngest children, 16-year-old Jonte Watts and three-

year old J.C.  Plaintiffs assert that none of these persons had any connection to, or knowledge of,

the crime.  Without knocking or announcing their presence, the MPD officers breached the

apartment's door, trained weapons on the family inside, detained them, and handcuffed everyone except three-year-old J.C., who was terrified and screamed and cried.  The officers refused to release Ms. Dorsey from handcuffs at any time during the search so that she could comfort J.C. As part of their search, the officers confiscated all cell phones and a laptop computer.  After two hours of searching, the officers left without any purses.

Plaintiffs cite statistics that indicate that a large majority of D.C. warrants that rely on "training and experience" to establish probable cause find no evidence at the residence searched; thus, they contend, the unsuccessful outcome of this particular search was both typical and totally predictable.  Given the widespread use of such allegedly-flawed affidavits, Plaintiffs contend that D.C. has a pattern and practice of insufficient training of MPD officers that frequently results in constitutional violations of the City's residents.  Accordingly, Plaintiffs sue Officer Dempster, the Defendant Officers, and the District of Columbia.

## II. Legal Standards

The Complaint advances five separate "Claims:"  (1) that the Affidavit was so lacking in probable cause that no reasonable officer could have relied on it; (2) that the Affidavit contained statements that were knowingly and recklessly false and omitted material information; (3) that the false and reckless statements and omissions in the Affidavit robbed the Warrant of probable cause and were the result of a pattern and practice by MPD; (4) that the Officers violated Plaintiffs' constitutional rights when they failed to knock and announce their presence before entering the apartment; and (5) that the Officers violated Plaintiffs' constitutional rights when they exceeded the scope of the Warrant, used excessive force, and made unnecessary and unreasonable seizures not authorized by the Warrant.  *See* 2d Am. Compl. at 19–22.

The Defendant Officers move to dismiss, asserting that they are entitled to qualified immunity for their good faith reliance on what they believed was a valid warrant properly executed. *See* Officer's MTD at 1. The District of Columbia also moves to dismiss, arguing that Plaintiffs have fail to state any constitutional violations and therefore cannot sue D.C. *See* DC MTD at 1.

## A. Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual information, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court must assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in favor of the plaintiff. *Sissel v. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). A court need not accept inferences drawn by a plaintiff if such inferences are not supported by the facts set out in the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Further, a court does not need to accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678. In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## B. Qualified Immunity

In assessing whether Plaintiffs have pleaded sufficient factual information to state a plausible claim for relief, the Court must additionally consider whether the Defendant Officers

are entitled to qualified immunity for their alleged actions.  "Although government officials may

be sued in their individual capacities for damages . . . qualified immunity protects officials from

liability 'insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'"  *Atherton v. D.C. Office of Mayor*, 567

F.3d 672, 689 (D.C. Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982)).

"When determining whether a right was 'clearly established,' 'the contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that

right.'"  *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).  "The relevant,

dispositive inquiry in determining whether a right is clearly established is whether it would be

clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*Saucier v. Katz*, 533 U.S. 194, 202 (2001).  It is the Plaintiffs' "burden to show that the particular

right in question—narrowly described to fit the factual pattern confronting the officers—was

clearly established."  *Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015).

### C. *Monell* Liability

If Plaintiffs have adequately pled a violation of their constitutional rights (whether

or not the Defendant Officers are entitled to qualified immunity), they can only sue the District

of Columbia if they can further show that a custom or policy of the District caused the violation.

"[W]hen execution of a government's policy or custom, whether made by its lawmakers or by

those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" then

"the government as an entity is responsible."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436

U.S. 658, 694 (1978).  "[I]n considering whether a plaintiff has stated a claim for municipal

liability, the district court must conduct a two-step inquiry.  First, the court must determine

whether the complaint states a claim for a predicate constitutional violation.  Second, if so, then

6

the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation." *Zaker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)); *see also Monell*, 436 U.S. at 694.

### III. Analysis

The Court will proceed chronologically through Plaintiffs' Claims, beginning with the Affidavit and then addressing its execution. Finally, the Court will assess the *Monell* claim against the District.

#### A. Claim 2: The Affidavit

Claim 2 is directed against Officer Dempster and alleges that his reliance on "training and experience" to assert that he was likely to find evidence of the purse theft in Apt. 31, 4701 Alabama Ave., S.W., violated the Fourth Amendment in two ways: (1) it was knowingly and recklessly false and misleading; and (2) it omitted known material facts, *i.e.*, Officer Demptster's knowledge of another residence occupied by Mr. Taylor and the statistical failures of such general warrants, that, if presented, would have undermined a finding of probable cause. 2d Am. Compl. ¶ 75. Officer Dempster has not been served. The Court summarizes the applicable law and allegations in Claim 2 only for the purpose of assessing below whether Plaintiffs have sufficiently plead a cause of action against the District.

The Supreme Court has stated that "[w]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). The information "is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id*. at 165. The Fourth Amendment is therefore violated when "a false

statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant, if the allegedly false statement is necessary to the finding of probable cause." *Id*. at 155–56.  The question presented here is whether Plaintiffs have adequately pleaded that Officer Dempster knowingly or recklessly included false information or failed to include necessary information.

That the Affidavit did not rely on more particularized evidence is not itself dispositive that a constitutional violation occurred.  The United States Court of Appeals for the District of Columbia Circuit (hereinafter the D.C. Circuit) has held that "observations of illegal activity occurring away from the suspect's residence can support a finding of probable cause to issue a search warrant for the residence, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence." *United States v. Thomas*, 989 F.2d 1252, 1255 (D.C. Cir. 1993).  *Thomas* ruled that an officer's "experience investigating narcotics trafficking" served as a reasonable basis to establish probable cause.  *Id.* at 1254–55.  In a series of further cases involving drug crimes, the D.C. Circuit has repeatedly held that such "training and experience" warrants suffice to establish probable cause to search the houses of drug traffickers; as the Circuit has stated, "[c]ommon experience suggests that drug dealers must mix and measure the merchandise, protect it from competitors, and conceal evidence of their trade [and f]or the vast majority of drug dealers, the most convenient location to secure items is the home." *United States v. Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008); *see also United States v. Washington*, 775 F.3d 405, 409 (D.C. Cir. 2014) (holding that an affiant's observations that, in his "extensive experience in drug enforcement," drug traffickers typically keep much of their drug supply at home or in a stash house, was sufficient to establish probable cause); *United States v. Johnson*, 437 F.3d 69, 72 (D.C. Cir. 2006) (holding that

probable cause to search a home was established where affiant testified that "in the affiant's experience, drug dealers frequently keep business records, narcotics, proceeds from sales and firearms in their houses").

Plaintiffs contend that these drug cases do not control here.  Indeed, *Thomas* allows "training and experience"-based warrants where "there is a reasonable basis to infer from the nature of the illegal activity observed" that evidence of a crime will be found in an alleged perpetrator's home.  The Circuit has accepted such warrants during drug trafficking investigations and/or arrests, but has not ruled on their applicability to the much broader range of alleged criminal conduct as to which Plaintiffs assert D.C. has extended the practice.

Officer Dempster cited his thirteen years as a law enforcement officer to establish his reasonable basis to believe that evidence of the purse theft (and the thief's clothing) might be found in Apt. 31.  However, the current record is silent as to what specific training and experience was relied upon when Officer Dempster prepared the Affidavit.  As another court in this District put the issue:  "A talismanic invocation of [an officer's] 'training and experience' will not inoculate an affiant's statement against the basic scrutiny that normally attends claims of probable cause in warrant applications."  *Davis v. District of Columbia*, 156 F. Supp. 3d 194, 201 (D.D.C. 2016)(JEB).

Plaintiffs allege that statistical data show that well more than half of D.C. search warrants that are based on "information and experience" to support probable cause, rather than case-specific facts, discover no criminal evidence.  *See* 2d Am. Compl. ¶¶ 8, 41.  They further allege that Officer Dempster knew this fact and omitted it from the Affidavit.  *Id.* ¶ 75.  The District of Columbia counters that the statistical data is irrelevant, since Officer Dempster was not required to include every known fact in his Affidavit.  *See* DC MTD at 14.  While all facts

need not be included in an affidavit, the Affidavit suggests that Officer Dempster relied on his aggregate experiences and training as a police officer, mostly in auto theft, to aver that non-auto thieves keep stolen goods in their homes.

In fact, probable cause existed to support the Warrant insofar as it sought to search Apt. 31 for evidence of the purse theft or suspicious clothing. Officer Dempster had located official records that tied the BMW, License EE0674, to Francis Taylor, its half-owner and the holder of its auto insurance. Mr. Taylor's driver's license identified Apt. 31, 4701 Alabama Ave., S.W., as his residence. Plaintiffs argue that the police knew of, and had already searched on that day, a different address thought to be where Mr. Taylor lived. Police suspicion of this other address was omitted from the Affidavit. However, it is not entirely unusual for persons in D.C. to have multiple locations at which they might sleep, particularly moving between relatives and girlfriends. Having failed to locate evidence of the theft at the first address, the Court finds nothing untoward about going on to an alternate, likely, location.

The Court is more troubled by the Affidavit's request, granted by the Warrant, to seize telephones not belonging to Mr. Taylor and to seize other electronic equipment with no connection to Mr. Taylor. Without further information, the Court finds it difficult to credit that grab-and-run purse thieves actually maintain electronic records of their criminal activity. The relevant paragraphs of the Affidavit are pure boilerplate and show no particular relationship to the crime under investigation.

These boilerplate, catch-all provisions raise questions as to MPD's training of its officers, and whether MPD had a custom and practice of instructing officers to cite general "training and experience" for probable cause in multiple kinds of cases, without case-specific

facts, presumably based on D.C. Circuit approval of such warrants in drug cases—and whether such instruction, if given, were proper or led to constitutional violations.

### B.  Claim 1: Reliance on the Warrant

Plaintiffs assert that, even after the Warrant was signed by a Superior Court judicial officer, it was so lacking in probable cause that no reasonable police officer could have relied on it.  "It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted," although an officer who "himself prepared the affidavit . . . may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004).

As to the Defendant Officers, "the protection of qualified immunity is available if "a reasonable officer could have believed that [his actions] were lawful, in light of clearly established law and the information the officers possessed." *Youngbey v. March*, 676 F.3d 1114, 1117 (D.C. Cir. 2012) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).  "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *United States v. Leon*, 468 U.S. 897, 921 (1984).  "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986).  Where a warrant is "not facially invalid," law enforcement officers executing it are entitled to qualified immunity. *Elkins v. District of Columbia*, 690 F.3d 554, 565 (D.C. Cir. 2012).

Plaintiffs make no allegation of fact that would undercut the legitimacy of the Defendant Officers' reliance on a Warrant signed by an appropriate judicial officer.  As

discussed *supra*, the D.C. Circuit has held that search warrants based on "training and experience" are valid, at least in certain cases.  The distinction that might be made among search warrants investigating different kinds of crimes would not reasonably be expected to be forecast by the Defendant Officers.  Plaintiffs allege no bad faith on their parts in accepting the Warrant for what it was: authority to conduct a search for stolen purses (or thief's clothes) in Apt. 31. Claim I will be dismissed as to the Defendant Officers.[4]

### C.  Claim 4:  Failure to Knock and Announce

Claim 4 is directed at Officer Dempster and the Defendant Officers.  The latter do not move to dismiss it at this time and the District of Columbia has expressly disavowed any intention to do so, except to the extent that Plaintiffs assert municipal liability for the no-knock entry.  D.C. Reply at 1–2 ("[T]o the extent that the District has argued for dismissal of Plaintiffs' claim the Defendant Officers failed to knock and announce their presence before making forcible entry into Plaintiffs' home that argument is withdrawn.").  The Court reads Claim 4 to allege violations of the Fourth Amendment only by Officer Dempster and/or the Defendant Officers. The Court will not dismiss Claim 4 as to these Defendants.  Since Claim 4 does not allege any illegal conduct by the District of Columbia, the District's arguments are moot.

### D.  Claim 5: Officers' Behavior Incident to the Search

Police have wide authority to take steps necessary to conduct searches in a safe and efficient manner.  In *Muehler v. Mena*, 544 U.S. 93 (2005), the Supreme Court held that "[a]n officer's authority to detain incident to a search" is "categorical" because "the character of the additional intrusion caused by detention is slight and because the justifications for detention

---

[4] As Claim 1 remains against Officer Dempster, it accordingly survives against the District for any municipal liability stemming from his theoretical actions.

are substantial," in particular "preventing flight in the event that incriminating evidence is found; minimizing the risk of harm to the officers; and facilitating the orderly completion of the search." 544 U.S. at 98.

       *Mena* recognized that handcuffing residential occupants during a search "was undoubtedly a separate intrusion in addition to detention," but held that it was appropriate in the circumstances of that case, which "was no ordinary search." *Id.* at 99, 100. The police in *Mena* were seeking evidence, including deadly weapons, related to a drive-by shooting. The Supreme Court instructed that "the governmental interests in not only detaining, but using handcuffs, are at their maximum where . . . a warrant authorizes a search for weapons." Joining the majority in *Mena*, Justice Kennedy wrote separately to emphasize that "if, at any point during the search, it would be readily apparent to any objectively reasonable officer that removing the handcuffs would not compromise the officers' safety or risk interference or substantial delay in the execution of the search" then "the restraint should . . . be removed." *Id*. at 102; *see also* LaFave, Wayne R., 2 Search & Seizure § 4.9(e) (5th ed.) ("While it seems clear on the facts of *Mena* that the detention in handcuffs was . . . 'reasonable as an initial matter,' whether such force was justified for the entirety of the 2-3 hour search is another matter." (quoting *Mena*, 544 U.S. at 100)). Some Judges in this District have found that *Mena* does not give law enforcement officers a categorical right to handcuff occupants during all residence searches. *See Nelson v. District of Columbia*, 953 F. Supp. 2d 128, 132 (D.D.C. 2013)(RCL) (declining to rule as a matter of law that *Mena* permitted law enforcement to handcuff occupants during a search and upholding jury verdict finding that MPD officers violated occupant's Fourth Amendment rights for handcuffing her during the entirety of two-hour search); *see also  Youngbey v. District of Columbia*, 766 F. Supp. 2d 197, 213 (D.D.C. 2011)(JSG) (allowing Fourth Amendment claims to proceed when

police handcuffed and trained weapons on home occupants for entirety of search), *rev'd on other grounds sub nom. Youngbey v. March*, 676 F.3d 1114 (D.C. Cir. 2012).

It is very clear that *Mena* authorized the detention of Plaintiffs during the entirety of the search of Apt. 31 without any violation of the Fourth Amendment. However, the watchword of the Fourth Amendment is "reasonable" and *Mena* gives pause as to whether its categorical detention rule extends to handcuffing occupants for hours when none is under criminal suspicion, none is alleged to have been aggressive or obstructionist, and the underlying crime involved an unarmed theft of purses with no violence. When all facts are known, Defendant Officers may be entitled to qualified immunity or a jury can evaluate the reasonableness of their use of handcuffs throughout the search. Such a decision cannot be made on this limited record.

However, Plaintiffs' allegations that the Defendant Officers violated the Fourth Amendment when one or more searched 16-year-old Jonte Watts are without merit; they will be dismissed. *Ybarra v. Illinois*, 44 U.S. 85 (1979) long ago held that a law enforcement officer may frisk individuals in the course of executing a search warrant "to find weapons [the officer] reasonably believes or suspects are then in the possession of the person he has accosted." *Id.* at 100. The search of Jonte Watts' person, equivalent to a *Terry* search,[5] is permitted to ensure the safety and security of the officers. There is no allegation that the search of Jonte was unusually intrusive or inappropriate; Plaintiffs only argue that he was a young person watching television on his own in an upstairs bedroom. 2d Am. Compl. ¶ 61. A 16-year-old is not too young to submit to a *Terry* search. Notably, Jonte Watts was released from handcuffs before the adults in the apartment, and, in light of the law, Plaintiffs make no allegation that the Defendant Officers

_____

[5] *Terry v. Ohio*, 392 U.S. 1 (1968).

engaged in any unconstitutional conduct in the course of their search beyond that already articulated *supra*.

The Court will also dismiss the allegations in Claim 5 that Defendant Officers exceeded the scope of the Warrant. While the constitutionality of the entirety of the Warrant may be subject to further litigation, there is no doubt that it facially authorized the Defendant Officers to seize electronic devices. *Compare* 2d Am. Compl. Claim 5, ¶ 81 (alleging seizure of a laptop and cellular devices) & Affidavit at 5. For that reason, Defendant Officers are entitled to qualified immunity.

### E. Fifth Amendment

The Second Amended Complaint alleges that the conduct of Officer Dempster and the Defendant Officers in entering, searching and handcuffing the Plaintiffs "shocks the conscience" in violation of the Fifth Amendment. 2d Am. Compl. (Claim 5, ¶ 81 ("Officers Raiding the Home Exceeded the Scope of the Warrant, Used Excessive Force, Made Unnecessary and Unreasonable Seizures Not Authorized by the Warrant, and Engaged in Conduct that Shocks the Conscience in Violation of the Fourth and Fifth Amendments."). The Court will dismiss the allegation that Officer Dempster or the Defendant Officers violated their Fifth Amendment rights to due process. The allegation confuses rights under the different Amendments. The Supreme Court has ruled that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing" those claims. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). More clearly, the D.C. Circuit has held that a plaintiff cannot "use the search of her home . . . as grounds for a claim under the Fifth

Amendment" because a search is explicitly governed by Fourth Amendment protections.  *Elkins v. District of Columbia*, 690 F.3d 554, 562 (D.C. Cir. 2012).  Accordingly, the Court will grant the Defendant Officers' Motion to Dismiss the Fifth Amendment allegation in Claim 5.

### F.  Claim 3: Municipal Liability

Claim 3 asserts that the alleged constitutional violations by the MPD stem from a policy, practice or custom for which the District of Columbia is liable due to a failure to train its officers properly.  2nd Am. Compl. (Dkt 24) ¶ 77.  When a motion to dismiss is pending, courts read complaint allegations and their reasonable inferences in the light most favorable to the non-moving party.  *See Sissel v. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). Doing so, the Court finds that the Second Amended Complaint is sufficient to make out a claim for municipal liability under *Monell* and its progeny.

The District largely predicates its argument against liability on the ground that no constitutional violations occurred.  *See* DC MTD at 1 ("Plaintiffs' second amended complaint fails to state a constitutional violation and, therefore, cannot support the *Monell* claim against the District.")  However, the Court has already concluded that the Plaintiffs have adequately pleaded a Fourth Amendment violation for the Affidavit's reliance on "training and experience" to justify search and seizure of electronics.[6]  Therefore, the question is whether the Plaintiffs have adequately pleaded that a custom or policy of the District caused the violation.

The District limits *Monell*-based argument to the assertion that "proof of a single incident of alleged unconstitutional activity is not enough to impose liability on a municipality unless proof of the incident includes proof that it was caused by an existing unconstitutional

---

[6]  As noted, Plaintiffs do not allege a custom or practice behind the officers' no-knock entry or the duration of handcuffs on one or more of the occupants of Apt. 31.

policy." DC MTD at 19. While undoubtedly accurate in some circumstances, the argument is unavailing here. Plaintiffs have alleged that the statistical evidence they cite will demonstrate that search warrants based on an officer's "training and experience" consistently fail to produce evidence of an alleged crime; if such statistics are proved and accepted, a jury might find that the conduct at issue here was not limited to a "single incident." *See* 2d Am. Compl. ¶¶ 8, 41. In addition, Officer Dempster cited his "training," presumably done at the behest of MPD and offered to many MPD officers, to support the Warrant. *See* Affidavit at 1, 3. Claim 3 will not be dismissed as it relates to those latter portions of the Affidavit that are reliant on "training and experience."

Plaintiffs' Claims against the District are decidedly convoluted. Claim 3 is titled "The Obvious Lack of Probable Cause and False and Reckless Statements and Omissions Were the Result of a Policy, Pattern and Custom of Such Conduct by the MPD and the Result of the MPD's Failure to Properly Train and Supervise its Officers"; its supporting paragraph includes only allegations relating to search warrants, thereby limiting its assertion of *Monell* liability accordingly. 2d Am. Compl. ¶ 75. Similar language appears in Claim 5, where Plaintiffs assert that the "seizures and searches reflect a pattern and practice of MPD officers . . . and reflect a failure of the MPD properly to train, supervise and discipline its officers." 2d Am. Compl. ¶ 81. However, as discussed above, most of Claim 5 has no merit as a matter of law: the Affidavit facially provided probable cause for the Defendant Officers to search for the stolen purses in Apt. 31; seizure of the laptop and cell phones was authorized by the Warrant and the Defendant Officers are entitled to immunity for seizing them; the search of Jonte Watts was lawful and for officer protection; detention of the members of the family living in Apt. 31 for the duration of the search was lawful under *Mena;* and the only question is whether Officer Dempster and/or the

Defendant Officers should have released one or more of the occupants from handcuffs more quickly. The Second Amended Complaint does not provide further evidence that this activity was directed by the District. Accordingly, Plaintiffs can proceed according to the Claim against the Defendant Officers, but it will be dismissed as to the District.

Claim 4 is short and sweet and contains no pattern-and-practice or custom-and-policy allegations. It will be litigated as drafted.

## IV.

For the reasons set forth above, the Court will **GRANT** in part and **DENY** in part the District's and Defendant Officers' respective motions to dismiss. The following Claims remain: (1) All claims as to Defendant Dempster; (2) Claim 3 as to the District relating to the Affidavit's reliance on training and experience; (3) Claim 4 (no-knock) as to the Defendant Officers; (4) Claim 5 as to the Defendant Officers relating to handcuffing all Plaintiffs for the duration of the search. A memorializing order accompanies this opinion.

Defendants shall file timely Answers to the Second Amended Complaint.

Date: January 11, 2017                                       _____/s/_____
                                                                          ROSEMARY M. COLLYER
                                                                          United States District Court